UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                                                                      No. 5:24-cr-22-BJB

THOMAS RUTTER WOOLLACOTT                                                        DEFENDANT

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS</u>

In June 2024, the Government indicted Thomas Woollacott for threatening to murder a federal official. *See* Indictment (DN 12); 18 U.S.C. § 115(a)(1)(B). In October, Woollacott asked the Court to dismiss the indictment, arguing that his statements weren't "true threats" and are thus protected by the First Amendment. Motion to Dismiss (DN 20). The Court held a hearing on that motion in December 2024 and then orally denied the motion at another pretrial hearing in March 2025. This written opinion further explains the Court's decision and also denies Woollacott's oral motion that the timing of his trial (set to begin April 8, 2025, by agreement of counsel) violates his rights under the Speedy Trial Act. MTD Hrg. Tr. (DN 30) at 18:2–7.

I.   Background

The facts of this case are straightforward. Beginning in 2023, Woollacott left several threatening voicemails with the office of a federal official. Affidavit Supporting Criminal Complaint (DN 1-1) at 2–3. When authorities interviewed Woollacott about the voicemails, he admitted that he left them. *Id.* at 6. Undeterred by law-enforcement scrutiny, Woollacott left more threatening voicemails with the same official after the interview. *Id.* at 6–7. Federal agents again contacted Woollacott but had difficulty speaking with him due to his "extreme profanity and insults." *Id.* at 7. After further investigation, a federal grand jury indicted Woollacott on two counts of threatening a federal official under 18 U.S.C. § 115(a)(1)(B). The indictment rests on two of those voicemails and alleges, using identical language for both counts, that:

> **THOMAS RUTTER WOOLLACOTT**, defendant herein, did threaten to assault and murder … a United States official within the meaning of Title 18, United States Code, Section 115(c)(4), with the intent to impede, intimidate, and interfere with such official while the official was engaged in the performance of official duties and with the intent to

1

retaliate against such official on account of the performance of those official duties.

Indictment at 1–2 (quoting 18 U.S.C. § 115(a)(1)(B)).

Woollacott moved to dismiss the indictment, arguing that because his statements in the voicemails weren't "true threats," his prosecution under § 115(a)(1)(B) violates the First Amendment.

## II. Motion to Dismiss

To survive a motion to dismiss, an indictment must "(1) set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,] and (2) be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citation omitted). As to the first requirement, an indictment that "set[s] forth the offense in the words of the statute itself" will suffice, as long as those words "set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). And as to the second, "the only additional information" required to satisfy it "is some indication of the relevant time period—when the alleged criminal conduct occurred." *United States v. Sittenfeld*, 522 F. Supp. 3d 353, 365 (S.D. Ohio 2021); *see also United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010).

The indictment here meets that standard. It repeats the words of § 115(a)(1)(B) essentially verbatim, including both the offense's proscribed conduct and required mental state. Indictment at 1–2. And it includes the exact dates on which Woollacott made the threats. *Id.* So "regardless" of whether Woollacott's statements "constitute[e] true threats," the indictment itself is "legally sufficient because it allege[s] the speech was a threat" with sufficient specificity to allow Woollacott to raise double jeopardy as a defense, if applicable. *United States v. Killingsworth*, No. 21-3028, 2022 WL 294083, at *4 (6th Cir. 2022); *see also id.* at 5 (affirming denial of motion to dismiss indictment when the indictment "alleged [the defendant's] speech was a threat … and alleged he possessed the requisite subjective intent").

At the hearing on this motion, defense counsel conceded as much: the indictment was facially adequate and no amendments that might be included in a hypothetical superseding indictment would address Woollacott's concerns about true threats. *See* MTD Hearing Tr. at 2:14–22. Instead, counsel took a bolder approach, asking the Court to part ways with the Sixth Circuit and adopt the reasoning of other circuits. *Id.* at 11:17–22. Specifically, the defense invited the Court to listen to the audio recordings of Woollacott's messages and determine, for itself, whether they

constitute "true threats" under the First Amendment. If so, according to Woollacott, the Court must dismiss the indictment because "[p]rosecuting Mr. Woollacott … based on the statements in these recordings violates his rights under the First Amendment." Motion to Dismiss at 4.

As previously explained to Woollacott in the courtroom, this theory suffers from several flaws. The most glaring is that this Court is bound by the decisions of the Sixth Circuit. "Vertical *stare decisis* is absolute, as it must be in a hierarchical system." *NRSC v. FEC*, 117 F.4th 389, 395 (6th Cir. 2024) (en banc) (quoting *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring in part)). Woollacott might disagree with the Sixth Circuit's indictment-sufficiency test (and, indeed, other circuits' tests appear stricter)[1], but the option to go a different direction is the Sixth Circuit's, not this Court's. *Id.* As long as the indictment sets forth each element of the offense in a sufficiently specific manner, it will survive a motion to dismiss. *See McAuliffe*, 490 F.3d at 531. As described above, the indictment here does so.

A related problem is who decides whether Woollacott's statements are true threats. At least at this juncture, that question is one for a jury, not a judge. "'True threats are serious expression[s],'" unprotected by the First Amendment, "conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). The question is whether "a reasonable observer would understand" the communication "as a serious expression of intent to harm." *United States v. Doggart*, 906 F.3d 506, 512 (6th Cir. 2018). This is an "objective" inquiry, *Elonis v. United States*, 575 U.S. 723, 751 (2015) (Thomas, J., dissenting) (citing *United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012)), based "on the objective assessment of a reasonable person," *United States v. Hunt*, 82 F.4th 129, 136 (2d Cir. 2023). And juries, not judges, answer the "factual" question, *United States v. Hoff*, 767 F. App'x 614, 621 (6th Cir. 2019), "whether words used are a true threat," *Hunt*, 82 F.4th at 136–37 (internal quotation marks omitted). *See also United States v. Censke*, No. 2:08-cr-19, 2009 WL 10681232, at *6 (W.D. Mich. Apr. 29, 2009) (declining to dismiss indictment because "it is ultimately for the jury to decide at trial whether the evidence proves beyond a reasonable doubt that a reasonable person … would take the statement or communication as a true threat"). Woollacott has offered no reason to deviate from these "well-established" principles in his situation. *Hunt*, 82 F.4th at 137.

---

[1] *See, e.g.*, *United States v. Stevens*, 881 F.3d 1249, 1252 (10th Cir. 2018); *United States v. Miah*, 120 F.4th 99, 107 (3d Cir. 2024); *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011); *United States v. Gilbert*, 884 F.2d 454, 457 (9th Cir. 1989); *United States v. Clemens*, 738 F.3d 1, 12 (1st Cir. 2013).

3

Some circuits, to be sure, afford defendants an opportunity to test whether statements amount to true threats pre-trial before a judge, not just at trial before a jury. *See* Motion to Dismiss at 6; Reply (DN 27) at 2 ("Mr. Woollacott urges the Court to … revie[w] the recordings, not [potentially inaccurate] transcripts."); *see, e.g.*, note 1, above. In those jurisdictions, the trial judge would ask whether a "reasonable jury" could conclude that the statements are true threats; the judge would not actually decide the factual question without a trial. So even if the Court evaluated the recordings, the best Woollacott could hope for under this persuasive authority is a jury determination. For good measure—and, again, at Woollacott's express request—the Court listened to the recordings in chambers and concludes that a reasonable jury could find that they constitute true threats. The Court needn't—and therefore mustn't—go further.

In response, Woollacott cites two decisions that in his view go further still: *United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997) and *United States v. Landham*, 251 F.3d 1072 (6th Cir. 2001). Reply at 1–2. In each, Woollacott argues, the court evaluated the language of the threats and determined, for itself, whether it constituted a true threat. But those cases differed in key ways from this one. In *Alkhabaz*, the court's holding rested on its conclusion that "no reasonable person" would've construed the defendant's statements "as being conveyed to effect some change … through intimidation." 104 F.3d at 1496. That aspect of *Alkhabaz*, however, "is no longer the law of the circuit": "time and an intervening Supreme Court decision" compelled that conclusion. *Doggart*, 906 F.3d at 512 (citing *Elonis*, 575 U.S. 723). So *Alkhabaz* is inapplicable.

*Landham* gets Woollacott no further. There, the Sixth Circuit reversed the district court's failure to dismiss two counts of an indictment charging the defendant with making threatening statements. 251 F.3d at 1076. As to the first statement, the government would've needed to prove that the defendant had threatened to kidnap someone. *Id.* at 1081. But the only person he threatened to kidnap was his own daughter. And at the time, under Kentucky law, it was legally impossible to kidnap one's own child. This "fundamental" flaw was a purely legal one. *Id.* As to the second, the government would've had to show that the defendant issued a "threat." But the second statement concerned only "*past* events, and thus as a matter of law could not constitute a *threat* (which refers to future events)." *Sittenfeld*, 522 F. Supp. 3d at 366. *Landham*, then, stands for the uncontroversial proposition that the court must dismiss an indictment that fails to state a legally valid offense. That's not the case here.

Yet another problem with Woollacott's theory—one that arguably pervades the out-of-circuit decisions cited above—is that Woollacott conflates a defense with an immunity. As he puts it, the First Amendment protects him from being *prosecuted*—

4

not simply *convicted*—under § 115(a)(1)(B) if his statements weren't true threats. Motion to Dismiss at 1, 4, 6; MTD Hearing Tr. at 10:13–23.

But that overlooks important distinctions between defenses and immunities. A defense is a "stated reason why the … prosecutor has no valid case." *Defense*, BLACK'S LAW DICTIONARY (12th ed. 2024). A successful defense prevents a defendant from being *convicted* of a crime. The success of a defense often turns, as here, on a fact-based determination that each side may support with evidence and that the factfinder must ultimately decide. *5545 Clarkins Dr. Inc. v. Poole*, 384 F. App'x 458, 464 (6th Cir. 2010). Put differently, in a case like this one, the Court can't know whether the defense will succeed without a trial on the underlying facts. That's true even when the defense finds it roots in the U.S. Constitution: "[M]any federal constitutional rights are as a practical matter asserted typically as defenses" to criminal prosecution, including the First Amendment right to free speech. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49–50 (2021); *Somberg v. McDonald*, 117 F.4th 375, 379 (6th Cir. 2024). Indeed, courts have characterized the First-Amendment argument that a given statement wasn't a true threat as a "defense." *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999); *Villa-Castaneda v. United States*, No. 20-6146, 2021 WL 4722011, at *3 (6th Cir. 2021) (single-judge order). That means it may, as here, require a full trial to resolve.

Immunity, by contrast, typically protects government officials sued in the line of duty from the *entire burden of litigation*, not merely the outcome—assuming a legitimate entitlement to the immunity. *See* RICHARD H. FALLON, JR. ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1038–41 (7th ed. 2015) (successful claim to immunity "will result in the dismissal of a lawsuit on a Rule 12(b)(6) motion"); *Butz v. Economou*, 438 U.S. 478, 507–08 (1978). It typically protects officials from facing a trial for "mere mistakes in judgment," *Butz*, 438 U.S. at 507, and "recognize[s] the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority," *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (quoting *Butz*, 438 U.S. at 504–06). To subject all government officers accused of constitutional violations to the burdens of litigation, as Judge Hand famously put it, "would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949). As a matter of law, a validly asserted immunity defense immediately halts litigation—no trial required.

This distinction between defenses and immunities shows why Woollacott's argument fails. Woollacott isn't a government official exercising discretion in the course of official duties. Nor has he pointed to any precedent treating a garden-variety First Amendment defense as an outright immunity from suit. (And the Court isn't aware of any, either.) Woollacott, like many others prosecuted under the

5

criminal laws, may not claim a fact-based immunity from suit—resolvable by judge rather than jury, before rather than after trial—simply because he believes he has a meritorious constitutional defense.[2]

*

The indictment in this case suffices under binding Sixth Circuit precedent, persuasive out-of-circuit authority, and baseline First Amendment principles. The law as presented by the Defendant affords the Court no basis to dismiss it.

### III.  Speedy Trial Act

At the hearing on the motion to dismiss, Woollacott (himself, not primarily through counsel) orally objected to the Court's exclusion of time under the Speedy Trial Act. As the Defendant noted, he's been incarcerated "for six months now, which is well beyond" the Act's requirements. MTD Hrg. Tr. at 18:6–7.

The Speedy Trial Act entitles a defendant to a trial beginning no later than 70 days after the date he was indicted. 18 U.S.C. § 3161(c)(1). The Act, however, excludes several periods of time from that 70-day countdown. Delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition" of the motion, are automatically excluded. § 3161(h)(1)(D). So too is any "period of delay resulting from a continuance granted" either on the Court's own motion or "at the request of the defendant or his counsel"— at least so long as the Court finds "the ends of justice served" by delay "outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(7)(A). Such "ends-of-justice" continuances must be supported by reasons set forth in the record. *Id.*

A federal grand jury indicted Woollacott on June 11, 2024. DN 12. On July 8, 27 days later, the Court held a telephonic status conference. From that point forward, the Court has excluded the time between this hearing and the trial date set by the Court (promptly following Defendant's demand for a jury trial). In its order memorializing the July 8 status conference, the Court found (and counsel agreed) that "the ends of justice" would be served by excluding the time between July 8 and the date of the next scheduled status conference—September 9. DN 18. "[F]ailure to allow this extension," the Court summarized in the order, "would deny counsel for the

---

[2] This case doesn't raise the concerns implicated by, say, the *Noerr-Pennington* doctrine— grounded in the First Amendment—under which private defendants may claim immunity from suit under the antitrust laws "for engaging in conduct (including litigation) aimed at influencing decision-making by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (citing *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)).

Defendant and the United States the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* (citing § 3161(h)(7)(B)(iv)). Indeed, during the status conference, defense counsel specifically requested 60 days to work through the discovery materials and discuss them with her client. The Court noted that congestion of its calendar or dilatory tactics from the Government did not factor into its decision to exclude time. *Id.* (citing § 3161(h)(7)(C)).

At the September 9 conference, the Court scheduled a third conference for October 9, finding that the intervening month was excludable on the same bases. *See* DN 19. At this September conference, Woollacott first demanded a jury trial. So the Court asked counsel to confer and propose a trial date based on how long trial preparations were expected to take. And as soon as counsel agreed on a trial date in Spring 2025, *see* Joint Status Report (requesting trial for March, April, or May 2025), the Court issued a scheduling order setting trial for early April and establishing all the ordinary pretrial deadlines. DN 26.

Finally, on October 9, Woollacott filed his motion to dismiss, automatically stopping the clock. DN 20; § 3161(h)(1)(D). At the hearing on that motion, Woollacott's counsel, after speaking with the Government and Woollacott himself, agreed that the time between the hearing and the trial should be excluded. MTD Hrg. Tr. at 17:6–9. The Court agreed that the ends of justice would be served by that exclusion, noting that the time was necessary for counsel "to review the material," and "to have an opportunity to discuss the case with the other side." *Id.* at 18:8–14. And the Court emphasized to counsel the importance of compliance with pretrial deadlines to ensure a timely trial. *Id.* at 19:3–19.

All this means that the bulk of the delay between the time Woollacott demanded a trial and the date of his trial is due to either routine trial preparation or Woollacott's own decision to seek dismissal of his indictment. His speedy-trial clock has thus been paused since July 8 and will remain so until day 1 of trial—April 9— giving him a speedy-trial total far below 70 days.

Woollacott doesn't object to this calculation, at least not in so many words. Rather, he contends that his views regarding timeliness weren't previously considered. *Id.* at 18:2–7. But neither motion-based exclusions nor ends-of-justice exclusions turn on a defendant's subjective desire to exclude time. As mentioned above, motion-based exclusions are automatic. § 3161(h)(1)(D). Delay is a function of the need for opposing counsel to respond, the defendant to reply, and the Court to issue a reasoned decision. (A contrary rule could create perverse incentives for defendants to file motions to induce speedy-trial violations.)

As to the ends-of-justice continuance, the Act is clear that the decision to exclude time rests with the Court. In making that decision, the Court may rely on

counsel's representations. Indeed, the Act expressly contemplates exclusions requested by the defendant's "counsel." § 3161(h)(7)(A). Where, as here, the record gives the Court no reason to believe Woollacott didn't consent to the exclusion, counsel's attestation is sufficient. *See United States v. Carnes*, 309 F.3d 950, 958 (6th Cir. 2002). This accounts for the first two exclusions entered by the Court in Woollacott's case. And even without counsel's representations, the Court would've entered those exclusions because, as noted on the record, those exclusions served the ends of justice. That is all the Act requires—requirements which are entirely consistent with the "great deal of latitude in scheduling trials" required by district courts and their "broad discretion to determine whether to grant continuances." *United States v. Walden*, 625 F.3d 961, 964 (6th Cir. 2010) (citing *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)). So the Court overrules Woollacott's speedy-trial objection.[3]

---

[3] Insofar as Woollacott's objection also relies on the Sixth Amendment, the Court would overrule it for the same reasons. In *Barker v. Wingo*, the Supreme Court set forth a four-factor test for courts to use in evaluating constitutional speedy-trial challenges. 407 U.S. 514, 530–33 (1972). Those factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530–32. Not a single factor weighs in Woollacott's favor. *First*, ten months will elapse between Woollacott's indictment and trial. While that length is "right at the line to trigger an analysis of the remaining factors," *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007), it falls short of the one-year mark at which point delay is "presumptively prejudicial," *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). *Second*, as set forth above, the delay in this case is due to entirely legitimate reasons. Counsel needed time to review discovery, confer with the prosecutor, and confer with Woollacott himself. And the bulk of the delay is due to the motion to dismiss that Woollacott himself filed. *See Brown*, 498 F.3d 523 at 531 ("[A] court should consider whether some of the delay is attributable to the defendant."). So the second factor doesn't support a violation. *Third*, Woollacott asserted his speedy-trial right at the hearing on his motion to dismiss. But by then, the Court had already entered multiple ends-of-justice continuances, based in part on his counsel's agreement. So this factor is neutral at best. *Fourth*, Woollacott hasn't explained how the delay prejudiced him (beyond the ordinary incidents of pretrial custody). Each continuance allowed his counsel to familiarize herself with his case and coordinate with both Woollacott and the prosecution on the path forward. And, again, most of the delay has been attributable to Woollacott's own decision to seek dismissal of his indictment. So while the Court understands Woollacott's desire to avoid "oppressive pretrial incarceration," it's unlikely that he has "anxiety and concern" due to the unresolved criminal charges. *Barker*, 407 U.S. at 561–62. And by allowing counsel to study the case and indeed seek dismissal of the charges, the delay has served the interests of Woollacott's defense. *See id.* at 532 (evaluating prejudice with reference to whether "defense will be impaired" ).

## ORDER

The Court denies Woollacott's motion to dismiss the indictment (DN 20) and overrules his speedy-trial objection (DN 30).